## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **KRISTINA KING and KEN KING** | ) | **CIVIL ACTION NO.** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **AMERICAN MULTI-CINEMA, INC.,** | ) | **1:19-cv-68** |
| **Defendant.** | ) | |

## COMPLAINT

## INTRODUCTION

Plaintiffs, Kristina King and Ken King (hereinafter "the Kings"), bring this Title III, Americans with Disabilities Act action, pursuant to 42 U.S.C. §12181, et seq., (the "ADA") and its implementing regulations; the Texas Human Resource Code, Tex. Hum. Res. Code Ann § 121.001 et seq. (the "THRC"); and the Texas Architectural Barrier Act, Tex. Gov't Code Ch. 469 (previously Texas Revised Civil Statutes, Article 9102 et seq.) (the "TABA").

In Count One of the Complaint, Plaintiffs seek to enjoin the Defendant to remove architectural barriers. Plaintiffs also seek statutory damages as permitted by Texas law, as noted below, as the Theater does not meet the express requirements of the ADA, THRC and TABA. In Count Two, Plaintiffs seek to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendant's failure to design and construct the facility for readily accessibility and usability by

individuals with disabilities.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et seq. and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court, the United States District Court for the Western District of Texas, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Western District of Texas.

4. Plaintiff, Kristina King is paraplegic. Specifically, Mrs. King suffered a spinal cord injury and is permanently confined to a wheelchair that limits her ability to perform manual tasks, walk, stand, lift, bend, and grab, all of which are major life activities pursuant to 42 U.S.C. §12102 (2)(A). As result of Mrs. King's disability, she requires the use of mobility aids and assistive technology. Because she suffers a physical impairment substantially limiting one or more major life activities Mrs. King is disabled pursuant to the ADA. 42 U.S.C. § 12102; *see also* 28 C.F.R. § 36.104.

5. Plaintiff, Ken King, is married to Kristina King and is not disabled. However, as result of association with a disabled individual, Mr. King suffered associational discrimination under the ADA pursuant to 42 U.S.C §12182(b)(1)(E); 28 C.F.R. §36.205. "In order to have Article III and statutory standing to bring an associational

discrimination claim under the ADA, 'a plaintiff must allege some 'specific, direct and separate injury' as a result of association with a disabled individual." <u>Nevarez v. Forty Niners Football Company, LLC.</u>, No. 16-CV-07013-LHK, 2017 WL 3288634, at *5 (N.D. Cal. Aug. 1, 2017).

6.  Mr. King suffered a direct and separate injury because he assisted and accompanied Mrs. King on all her visits to the Theater. It was his *own* desire to visit the Theater with Mrs. King, but he suffered injuries in doing so because the Defendant denied Mrs. King full and equal accessibility. Mr. King experienced frustration, emotional distress, physical exhaustion and discrimination as result of being forced to assist his disabled wife to traverse and overcome numerous access barriers at the Theater.

7.  Defendant, American Multi-Cinema, Inc., (hereinafter "AMC"), is a corporation that is both registered to conduct business and is conducting business within the State of Texas sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, AMC "operates" and "leases" the theatrical exhibition located at 11200 Lakeline Mall Drive, Cedar Park, Texas 78613. The theatrical exhibition is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, AMC Theaters offer a range of ways to get more out of movies, including different amenities such as spacious rocking seats to luxury recliners, innovative menus and premium offerings like IMAX, Dolby Cinema, and Prime at AMC, which qualifies AMC as a place of public accommodation pursuant to 42 U.S.C. § 12181(7) and is a public facility pursuant to Tex. Hum. Res. Code Ann. § 121.002(5).

8.  All events giving rise to this lawsuit occurred in the Western District of Texas and the

Defendant is a citizen thereof.

9. Plaintiffs, the Kings, have resided in the Austin area for over 10 years and live less than 10 miles from Defendant's establishment.  The Kings shop, eat, and enjoy the variety of entertainment at Lakeline Mall where AMC is located.  In fact, the Kings visit the Lakeline Mall, where AMC is located, about two times a month to shop or browse. The Kings sometimes enter the AMC from within the Mall. The Kings specifically enjoy watching movies at AMC for its superior acoustics, richer imagery and superior quality movie snacks. The Kings intend to continue visiting AMC because they enjoy innovative concepts that enhances the movie-going experience which includes but is not limited to power-recliner seats to spacious rocking seats; enhanced food and beverage choices, innovative menus and premium offerings like IMAX, Prime at AMC, and Dolby Cinema. The Kings will return not only to watch movies at the AMC theater, but also to confirm ADA compliance by AMC. The Kings do not know exactly when they will return to AMC because they have not planned out every shopping trip for the rest of their lives. Such specific planning is not necessary to invoke the ADA.  See, e.g.  Parr v.  L & L Drive Inn Restaurant  96 F. Supp.2d 1065, 1079 (D. Haw 2000) and Segal v. Rickey's Restaurant and Lounge, Inc. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). The Kings for certain intend to return to AMC, even after all ADA Title III violations are remediated.

10. Because of the barriers described below in Paragraph 28 and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendant's

premises based on Mrs. King's disabilities.

11. Accordingly, Plaintiff, Mrs. King, has Article III standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's theatrical exhibition is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to the theatrical exhibition by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by being denied full and equal enjoyment of the use of the theatrical exhibition as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in Paragraph 27.

12. Plaintiff, Mr. King, has Article III standing to pursue this case under associational discrimination pursuant to 42 U.S.C §12182(b)(1)(E); 28 C.F.R. §36.205, because (1) he has association to a disabled individual as Mrs. King's husband; (2) the Defendant's theatrical exhibition is a place of public accommodation pursuant to the statutory and regulatory definition; (3) he has suffered a separate concrete and particularized injury because he experienced frustration, emotional distress, physical exhaustion, and discrimination as further described in Paragraph 6 and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in Paragraph 27.

## II. PLAINTIFFS' CLAIMS

**Title III of the American with Disabilities Act**

13.   On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

14.   Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that AMC offers a range of ways to get more out of movies, including different amenities such as spacious rocking seats to luxury recliners, innovative menus and premium offerings like IMAX, Dolby Cinema, and Prime at AMC. Accordingly, it is covered by the ADA and must comply with the Act.

**The Texas Architectural Barrier Act and The Texas Accessibility Standards**

15.   Texas passed the Texas Architectural Barrier Act in an effort "to further the policy of this state to encourage and promote the rehabilitation of persons with disabilities and to eliminate, to the extent possible, unnecessary barriers encountered by persons with disabilities whose ability to…achieve maximum personal independence is needlessly restricted." Tex. Gov't Code, Sec. 469.001.

16.   Under the TABA, the Texas Commission of Licensing and Regulation (the "Commission") was charged with the task of adopting "standards, specifications, and other rules…that are consistent with standards, specifications, and other rules adopted under federal law." Tex. Gov't Code, Sec. 469.052.

17.     The Texas Accessibility Standards (the "TAS"), adopted under the TABA, apply to,
inter alia, "a privately funded building or facility that is defined as a 'public
accommodation' by Section 301, Americans with Disabilities Act of 1990 (42
U.S.C. Section 12181), and its subsequent amendments…" Tex. Gov't Code, Sec.
469.003(4).

18.     The TAS received equivalency certification from the United States Department of
Justice on September 23, 1996, including the appendix and Architectural Barriers
Administrative Rules Chapter 6, which met or exceeded the new construction and
alteration requirements of Title III of the ADA. "This means that such buildings
must comply with the Texas Accessibility Standards of the Architectural Barriers
Act ("TAS"), which is similar to the ADA's Accessibility Guidelines." Burrell v.
Akinola, No. 3:15-CV-3568-B, 2016 WL 3523781, (N.D. Tex. Jun. 27, 2016)
(citing Tex. Hum. Res. Code Ann. § 121.003(d)(1) and Tex. Gov't Code Ann. §
469.003(a)(4)).

**COUNT ONE**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv); the TABA and the TAS**
**Tex. Hum. Res. Code Ann. § 121.001 et seq.; Tex. Gov't Code, Sec. 469.001**
***(Architectural Barriers)***

**Defendant's Facility Is Subject to the 2010 ADA Design Standards and 2012 TAS for the
Portions of the Facility Addressed in This Complaint**

19.     Plaintiffs are informed and believe based on publicly available information that AMC
located at 1200 Lakeline Mall Drive, Cedar Park, Texas 78613 was constructed in 2017.

20.     Compliance with the 2012 TAS for new construction and alterations of all buildings
and facilities subject to Texas Government Code Chapter 469.003.

21. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

22. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations

subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable*. See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

23. For the architectural barriers at issue in this case, the TAS and 2010 Standards for Accessible Design are applicable.

**Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction**

24.     The Defendant has discriminated, and continues to discriminate, against Plaintiff, Mrs. King, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at AMC's Theatrical Exhibition in derogation of 42 U.S.C. § 12101 et seq., and as prohibited by 42 U.S.C. § 12182 et seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

25.     The Defendant also has discriminated, and continues to discriminate against Plaintiff, Mr. King, by denying equal goods, services, facilities, privileges, advantages, accommodations, and/or other opportunities at AMC based on the known disability of an individual with whom Mr. King is known to have a relationship and association. Mr. King assisted and accompanied Mrs. King on all her visits to AMC and it was his own desire to visit the theater with Mrs. King, but he suffered injuries in doing so because the Defendant denied Mrs. King full and equal accessibility. Mr. King experienced frustration, emotional distress, physical exhaustion and discrimination as described in Paragraph 6.

26.     As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiffs' access was

inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facilities in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

27. Plaintiffs have definite plans to return to AMC's theatrical exhibitions in the future, as described in Paragraph 9. Plaintiffs will return to AMC within the next few months not only to watch movies and enjoy innovative concepts that enhances the movie-going experience which includes but is not limited to power-recliner seats; enhanced food and beverage choices, spacious rocking seats to luxury recliners, innovative menus and premium offerings like IMAX, Dolby Cinema, Prime at AMC and other premium movie offerings, but also to see if AMC has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so even when AMC is repaired because the theatre will be greatly improved and more desirable to visit. Absent remedial action by Defendant, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant based on Mrs. King's disabilities. The Eleventh Circuit, held in Houston v. Marod Supermarkets, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff ... will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiffs' plans to continue visiting the subject facility in the future, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

28.  Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

29.  "The discrimination prohibited by [the THRC] includes…a failure to…comply with Article 9102, Revised Statutes." Tex. Hum. Res. Code Ann. § 121.003(d)(1). Thus, a violation of the Texas Architectural Barriers Act (TABA) – and the 2012 TAS requirements adopted under the TABA – is a violation of the Tex. Hum. Res. Code § 121.003(d)(1).

30.  Plaintiffs have been throughout the Theater, from the entrance to and throughout the concessions area, the check-out service counter; the restrooms; the dining areas; circulation paths and accessible routes and service areas; and paths of travel, all of which is more specifically described below. Defendant's facility located at 11200 Lakeline Mall Drive, Cedar Park, Texas 78613, more commonly known as "AMC", violates the ADA and TABA particularly but not limited to:

**INTERACTIVE SELF-SERVICE TICKET COUNTER**

1.  AMC provides an interactive self-service movie ticket counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendant:

a. The interactive self-service ticket counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

b. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

c. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

d. The existing interactive self-service ticket counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

e. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

f. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

g. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter

surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **h.**   There is no ADA accessible portion of the movie ticket counter that extends the same depth as the non-accessible portion of the movie ticket counter;

    **i.**   AMC fails to maintain the accessible features at the movie ticket counter that are required to be readily accessible to and usable by individuals with disabilities;

    **j.**   The interactive self-service ticket counter requires the use of tight grasping, twisting, and pinching of the wrist;

## MCGUFFIN'S SPORTS BAR

**2.**   AMC provides several types of seating for able-bodied individuals in the Sports Bar, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the Sports Bar;

**3.**   AMC provides a bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **a.**   The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

**b.** The bar fails to provide at least five percent (5%) ADA accessible seating;

**c.** The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**d.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**e.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

**f.** AMC fails to maintain the accessible features at bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**4.** AMC provides high top tables for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**a.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

    **b.**   The seating tables fails to provide at least five percent (5%) ADA accessible seating;

    **c.**   The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **d.**   The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **e.**   There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

    **f.**   AMC fails to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

## MAIN CONCESSION AREA

**5.**   AMC provides self-servicing counters for napkins, condiments, and other items for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

a. The self-servicing counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

b. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

c. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

d. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

e. The condiment items on the counters are arranged so that individuals with disabilities cannot fully and independently access the items;

f. AMC's current practice on maintaining the condiment items stocked for guest segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

g.   AMC's fails to maintain the accessible features at the self-servicing counters that are required to be readily accessible to and usable by individuals with disabilities;

6.   AMC provides self-servicing beverage counters for lids, straws, and other items, adjacent to the beverage dispensing machines, for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

a.   The self-servicing beverage counters fail to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counters;

b.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

c.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counters;

d.   The self-servicing beverage counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

**e.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**f.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**g.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**h.**    The lids, straws, and other items located on the self-servicing counters at the beverage dispensing machines are arranged so that individuals with disabilities cannot fully and independently access the items;

**i.**    AMC's current practice on maintaining the lids, straws, and other items at the self-servicing counters at the beverage dispensing machines stocked for guest segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

**j.**   The floor mats at the self-servicing counters at the beverage dispensing machines are not stable, firm, or otherwise secure to the floor;

**k.**   AMC fails to maintain the accessible features at the self-servicing counters that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM

**7.**   Defendant provides a men's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**a.**   The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

b.  There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

c.   The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

d.  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19

inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

e.  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

f.  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**g.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**h.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**i.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in an accessible and usable condition by the disabled;

**8.** Defendant provides a lavatory in the men's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

a. The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

b. There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

c. The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

d. The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

e. There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

    **f.** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

**9.** Defendant provides a women's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **a.** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

    **b.** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals

including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

c.  The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

d.  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

e.  The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the

ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

f. The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

g. The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited

to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**h.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**i.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**j.** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in an accessible and usable condition by the disabled;

    **k.** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

10. Defendant provides a lavatory in the women's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **a.** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

    **b.** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

    **c.** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

    **d.**    The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

    **e.**    There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

    **f.**    There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

**31.**    To date, the barriers to access and other violations of the TABA consistent with ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**32.**    Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

**33.**    Plaintiffs are entitled to Texas minimum presumptive damages of $300 per each violation as provided for under Tex. Hum. Res. Code § 121.004(b). "On January 1, 2014, the statutory presumption was raised to $300 per violation." See Burrell v. Akinola, No. 3:15-CV-3568-B, 2016 WL 3523781, at *1 (N.D. Tex. Jun. 27, 2016) (citing Tex. Hum. Res. Code § 121.004(b) and Footnote); Diaz v. Doneraki

<u>Restaurants, Inc.</u>, No. H-12-2238, 2014 WL 2332822 (S.D. Tex. May 29, 2014).

34.   Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facility, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

35.   Plaintiffs re-allege Paragraphs 1-34 above.

36.   The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

37.   The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii) -(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly,

the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

38. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

39. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

40. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals

with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

41.    For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v. Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

**Defendant's Failed Practices and Lack of Policies Are Discriminatory**

42.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations*."

43.   Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

44.   As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiffs. Defendant will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

45.   Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously

identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

46. Defendant's use of its theatrical exhibition, and its practices at the AMC Theatre located at 11200 Lakeline Mall Drive, Cedar Park, Texas 78613, literally create barriers and in so doing denies Plaintiffs the full and equal enjoyment of the moviegoer experience. Those practices include but are not limited to the following:

a) Defendant makes ticketing sales/service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business throughout AMC's in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, view the assortment of movie options;

b) Defendant makes sales/service counters for the concessions throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the concession counters to transact business throughout AMC's in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, and view the imaginative food and beverage options.

**c)** Defendant makes self-service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the self-service counters to receive service throughout AMC in the same way the non-disabled do, because the non-disabled have counters they can use independently to receive services,  and retrieve items at the counter's independently.

**d)** Defendant makes its entire innovative movie-going experience inaccessible for use by disabled individuals by failing to provide any level of accessibility whatsoever so that disabled individuals are outright excluded from those movie goer experiences;

**e)** Defendant makes the restrooms inaccessible for use by the disabled by failing to provide an ADA accessible toilet compartment and lavatory sink that conform with the design standards;

**f)** Defendant fails to provide any signage throughout the theater displaying the International Symbol of Accessibility identifying areas of the theater as ADA accessible;

**g)** Defendant's seating arrangements at AMC Theatre are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same "innovative movie goer" experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of

table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the dine in "movie-going" experience.

h) Defendant makes its bar counter at AMC Theatre inaccessible for use by the disabled by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiffs cannot fully and equally order drinks at the bar, enjoy happy hour at the bar counter, watch sporting events on the TV at the bar, view the on-tap beer selection, or any other benefit or service provided at the bars in the same way the non-disabled do, because the non-disabled have bar counters they can use to receive and enjoy all of the goods and services offered;

i) Defendant makes sales/service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business throughout AMC's in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, purchase prizes at the redemption counter and order food and drink items;

j) Defendant, according to its own publicly available information, lacks any policies, practices, and/or procedures that ensures the "use" of its allegedly material compliant facilities comply with the ADA.

k) Defendant renders the counter surfaces inaccessible by selling merchandise

from the area of the counter that is supposed to be the accessible counter surface;

**l)** Defendant's acknowledges in its own 2017 filings with the SEC, that its theaters must comply with Title III ADA and that new construction or alterations made to the facility must conform to ADA;

**m)** Defendant's current practice, based on their SEC annual filings, which addresses other ADA, is to make a bold assertion that their theaters materially comply with the ADA in an attempt, to avoid having to make alterations to its facilities.

**n)** Defendant's corresponding practice stated above is to outright deny any responsibility to make modifications to practices and policies as well as repairs to barriers, unless demanded by the disabled.

**o)** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

47. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

48. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

49. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else

it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its theatrical exhibition as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the AMC Theater, as described above in detail.

50.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

51.   To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

52.   A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with ADA and all its implementing regulations, THRC and TABA, so that architectural barriers identified above are permanently removed from Defendant's theatrical exhibition consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the AMC owned theater; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

53. As pled above, American Multi-Cinema, Inc. "operates" and "leases" the AMC owned theatrical exhibition located at 11200 Lakeline Mall Drive, Cedar Park, Texas 78613, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

54. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

55. By this Complaint, Plaintiffs provide sufficient notice of their demand for an alteration in Defendant's policies, practices, and procedures.

56. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

57. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

58. Plaintiff re-alleges paragraphs 1-56 above.

59. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by*

> *any person who owns, leases (or leases to), or operates a place of public accommodation."*

**60.**   42 U.S.C. § 12182(b)(1)(E) provides:

> *"It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."*

**61.**   Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**62.**   Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous*

*and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

63.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

64.    The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

65.    The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

66.    Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and

omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

67. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

68. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. §12182(b)(1)(A)(i).

69. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v.  Norwegian Cruise Line Ltd.,* 545 U.S. 119,

128–29, 125 S. Ct. 2169, 162 L . E d . 2d 97 (2005) See also, _Baughman v.  Walt Disney World Company_, 685 F.3D 1131, 1135 (9th Cir. 2012).

70.   Plaintiffs were denied full and equal access to AMC Theaters. Plaintiffs with certain want to return to the Defendant's theatrical exhibition to enjoy the innovative concepts that enhances the movie-going experience which includes but is not limited to power-recliner seats to spacious rocking seats; enhanced food and beverage choices, innovative menus and premium offerings like IMAX, Dolby Cinema, Prime at AMC and other premium movie offerings. More specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled individuals and enjoy the same experience that non-disabled individuals have when watching movies at AMC which Defendant has failed to provide to Plaintiffs as follows:  Defendant failed to provide Plaintiffs the same opportunity to independently participate and enjoy the experience of the innovative movie going experience and its associated benefits; Defendant's failure to provide Plaintiffs the same "movie-goer" experience by AMC's ablest use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same "movie-going" experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the "movie-goer" experience; Defendant's failure to provide Plaintiffs the same experience at its bar by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiffs cannot enjoy the experience of

ordering drinks at the bar, happy hour at the bar, watching sporting events on the TV at the bar, viewing and selecting the assortment of on-tap beer selection, or any other benefit or service able-bodied individuals get to enjoy when sitting at the bar counter; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters in the concession area, while the non-disabled can independently access the counters and the services provided at the counters; Defendant failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the self-service counters, while the non-disabled can independently access the goods and services at the self-service counters; Defendant failed to provide the same experience by making it nearly impossible for the disabled to use the beverage dispensing machines, while the non-disabled can independently use the machines; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the service counters, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide Plaintiffs the same experience of its sales/service counters throughout its establishment by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot enjoy that level of consumer interaction at the sales/service counters to transact business throughout AMC's in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services and order food and drink items; Defendant failed to provide accessible restrooms throughout AMC for disabled individuals, which means that, unlike the able-bodied,

the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and prohibited from using all the other elements of the restrooms; Defendant's failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendant's continued failure to maintain ADA accessibility as an integral part of the "movie-going" experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiffs and others similarly situated differently, in that, AMC makes Plaintiffs dependent on family or an independent third party which is not the same "movie-going" experience that AMC affords to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiffs from having the same experience that non-disabled individuals have when at AMC's Theatre.

71. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

72. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or

separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii) -(iii); 28 C.F.R. § 36.202(b)-(c).
Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be
provided to individuals with disabilities in "the most integrated setting appropriate."
42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in
addition to recognizing that persons who use wheelchairs have been forced to sit apart
from family and friends, also recognizes that persons who use wheelchairs
historically have been provided "inferior seating" and "segregated accommodations"
compared to non-disabled individuals, thus relegating persons who use wheelchairs
"to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633,
651 (2000) (discussion of §§ 36.308, 36.203).

73. Thus, Defendant's "use" of the accessible features constitutes statutory
discrimination in violation of the ADA, because Defendant has segregated and
separated the disabled from the non- disabled individuals. "*The goal is to eradicate
the invisibility of the handicapped. Separate-but-equal services do not accomplish
this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990
U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate
discrimination against disabled individuals, and to integrate those individuals into the
economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S.
661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R. Rep. No. 101-485,
pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

74. Defendant discriminated against Plaintiffs by denying Plaintiffs "full and equal
enjoyment" and use of the goods, services, facilities, privileges and accommodations
of the facility during each visit. Each incident of deterrence denied Plaintiff an equal

"opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of AMC Theaters.

75.   Defendant's conduct and Defendant's unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiffs and others similarly situated unequally to the status of a second-class citizen.

76.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

77.   Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

78.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
**(Failure to design and construct facility for ADA compliance)**

79.   Plaintiffs re-allege paragraphs 1 – 78 above.

80.   42 U.S.C. § 12183(a)(1) provides:

*[Discrimination includes] a failure to design and construct*

*facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

81.    Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

82.    To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public." For new construction and alterations,

the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others.*" *Id.*

83.  As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

84.  To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

85.  Defendant "operates" and "leases" the AMC Theater and is directly involved in the designing and/or construction of its theatrical exhibition in this litigation for first occupancy after January 1993.

86.  Defendant was and is required to design and construct its theatrical exhibition to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its theatrical exhibition readily

accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its theatrical exhibition in compliance with the ADA during planned alterations as described throughout this Complaint.

87.   According to Defendant's own publicly available information, Defendant chose to design, construct, and maintain its theatrical exhibition in a way that is not ADA Title III compliant whatsoever. Defendant literally strategically design, construct, and maintain its theatrical exhibitions without any regard to the disabled. Defendant's systematic design of its theatrical exhibitions fails to afford disabled individuals the same innovative movie-going experience that is afforded to individuals without disabilities.

88.   To date, the Defendant's discriminating actions continue.

89.   Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

90.   Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

   **WHEREFORE**, premises considered, Ken King and Kristina King, demand judgment against the Defendant on Counts One through Four and request the following injunctive and declaratory relief and minimum presumptive statutory damages:

1.   That the Court declare that the property owned and operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with

Disabilities Act, as more particularly described above;

2.  That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendant to provide Plaintiffs full and equal access both to the AMC Theaters experience and to the use of the AMC Theaters facility, and further order Defendant to maintain the required accessible features at the theatrical exhibition so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time to allow them to undertake and complete corrective procedures;

6.  That the Court enjoin Defendant to remediate AMC Theaters to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.  That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs as provided for under 42 U.S.C. § 12205 and 28 CFR § 36.505;

8.  That the Court award minimum presumptive damages of $300 per each violation as provided for under Tex. Hum. Res. Code § 121.004(b); <u>Diaz v. Doneraki Restaurants, Inc.</u>, No. H-12-2238, 2014 WL 2332822 (S.D. Tex. May 29, 2014); and

9.  That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this 29th day of January, 2019.


*/s/Amanda L. Powell*_____
**Amanda L. Powell**
**TX Bar # 24081104**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
(334) 819-4030 (Office)
(334) 819-4032 (Fax)
(334) 323-0028 (Direct)
Email: ALP@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 29th day of January, 2019 to the following:

**AMERICAN MULTI-CINEMA, INC.**
c/o Corporate Creations Network, Inc.
attn.: REGISTERED AGENT
2425 W Loop South #200
Houston, TX 77027

*/s/Amanda L. Powell*
**Amanda L. Powell**
**TX Bar # 24081104**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
(334) 819-4030 (Office)
(334) 819-4032 (Fax)
(334) 323-0028 (Direct)
Email: ALP@ADA-Firm.com
*Attorney for the Plaintiff*